UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.: **07-21512**

**CIV-ALTONAGA**

GREAT LAKES REINSURANCE
(UK) PLC,

      Plaintiff,

vs.

STEVEN POMARICO and
DENNIS DODSON,

      Defendants.

_____/

**MAGISTRATE JUDGE
TURNOFF**

## COMPLAINT FOR DECLARATORY JUDGMENT

The Plaintiff, GREAT LAKES REINSURANCE (UK) PLC., (hereinafter referred to as

"GREAT LAKES"), by and through its undersigned counsel and pursuant to 28 U.S.C. §§ 2201 et

seq., hereby files this action for declaratory judgment against the Defendants, STEVEN

POMARICO and DENNIS DODSON (hereinafter referred to as Defendants) and states as follows:

      1.     This is an action for declaratory relief on a policy of marine insurance that is within

this Court's admiralty and maritime jurisdiction arising under 27 U.S.C. § 1333.  The complaint

herein sets forth an admiralty and maritime claim within the meaning of rule 9(h) of the Federal

Rules of Civil Procedure and the Supplemental Rules for certain admiralty and maritime claims.

      2.     Plaintiff GREAT LAKES is a foreign insurance entity incorporated and existing

under the laws of the United Kingdom and, at all times material hereto, was the Underwriter of a

policy of marine insurance providing certain hull and machinery coverage for a 2003 30' Sea Ray

CASE NO.

PAGE 2

Powerboat known as M/V "DOCTOR'S ORDERS," owned by Defendants.

3.      Defendant DODSON is upon information and belief a co-owner of the vessel M/V "DOCTOR'S ORDERS" which at all material times was present within the navigable waters within the jurisdiction of this Court.

4.      Defendant POMARICO is upon information and belief a Florida resident and at all times material a co-owner of the vessel M/V "DOCTOR'S ORDERS" which at all material times was present within the navigable waters within the jurisdiction of this Court.

5.      On or about July 18, 2006, Plaintiff Underwriters issued the subject policy of marine insurance for the 2003 30' Sea Ray known as M/V "DOCTOR'S ORDERS". The policy was issued for a period of twelve (12) months effective June 25, 2006 through June 25, 2007. (*See*, Continuation Cover Note and Insurance Policy No. 200/658/78444, attached hereto as Exhibit "A".)

6.      On or about February 10, 2007, the M/V "DOCTOR'S ORDERS" sank in calm waters at its dock at Sea Isle Marina located in Miami, Florida.

7.      After receiving notification of the loss that occurred on or about February 10, 2007, the Plaintiff Underwriters immediately retained marine surveyors to determine the cause, nature and extent of damage to the M/V "DOCTOR'S ORDERS". On February 19 and 20, 2007 Greg Wager surveyed the M/V "DOCTOR'S ORDERS" at Southeast Divers dock in Miami, Florida. Mr. Wager's marine survey revealed the following conditions existed:

        (a)      The cause of loss was due to salt water submersion, and poor preservation of the interior, electrical and engine room components;

        (b)      The reason for the submersion was found to be a broken fitting on an air conditioning circulation pump and a lack of shore power to keep batteries

CASE NO.

PAGE 3

charged;

(c)     The existing bilge pump on the M/V "DOCTOR'S ORDERS" did not operate because of a lack of shore power and the presence of fully discharged batteries;

(d)     Following the submergence of the M/V "DOCTOR'S ORDERS," the engines were not pickled in a timely manner.  It was determined that the engines did not receive attention until February 20, 2007, by which time major damage had already been sustained;

(e)     The generator was not preserved or cleaned;

(f)     Air conditioning components were neither cleaned nor preserved;

(g)     Interior furnishings were damaged from submersion and little was done to preserve or protect them from further damage;

(h)     At the time of survey, the vessel's interior remained partially flooded and no actions were taken to de-water and dry the interior.

8.     The policy of insurance provides Hull and Machinery coverage for direct physical loss or damage to the vessel, excluding coverage, in pertinent part, for the following:

> Losses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, mold, animal and marine life.

*See*, Policy of Insurance, Section 3: Exclusions to Coverage A, Sub-Part (b).

9.     In addition to the foregoing, the policy includes the following warranty of seaworthiness:

> It is warranted that the scheduled vessel is seaworthy at all
> times during the duration of this insuring agreement. Breach
> of this warranty will void the insuring agreement from its
> inception.

*See*, Policy of Insurance, Section 9: General Conditions and Warranties, Sub-Part (a).

10.     In addition to the foregoing, the policy sets forth the following requirements in the event of a loss:

> Immediately take all possible steps to minimize the loss and
> protect the scheduled vessel from further loss. Failure to do
> so may invalidate your insurance coverage or reduce the
> amount of any claim hereunder.

*See*, Policy of Insurance, Section 10: Your Duties in the Event of a Loss.

11.     Plaintiff's investigation has revealed the sinking of the M/V "DOCTOR'S ORDERS" in calm waters at its dock on or about February 10, 2007 was caused by the vessel's unseaworthy condition, specifically, the failed fitting on the air conditioning system allowed the ingress of water. The failure to maintain the vessel's battery power system in operating conditioning further rendered the vessel unseaworthy and not fit for its intended use because the bilge pumps were rendered inoperable. Additionally, the vessel's owners or managers failed to exercise due diligence by failing to mitigate their loss. Specifically, the engines were not pickled immediately following the vessel's being de-watered; they did not receive attention until February 20, 2007, by which time additional losses were sustained. Additionally, the generator was neither preserved nor cleaned. Additionally, on February 22, 2007 the vessel's interior remained partially

flooded resulting in additional damages.

12.     As a result of the foregoing, the insured breached the policy's express warranty of seaworthiness by failing to maintain the vessel in a seaworthy condition at all times, which breach caused and/or substantially contributed to the loss. Additionally, or in the alternative, Defendants breached the implied warranty of seaworthiness, resulting in the subject loss. Moreover, Defendants failed to mitigate their damages resulting in substantial additional damage to the M/V "DOCTOR'S ORDERS" following the submersion.

13.     Plaintiff has brought this action pursuant to 28 U.S.C. §§ 2201 et seq. for the purposes of determining a question in actual controversy between the parties regarding coverage under the subject policy of marine insurance.

WHEREFORE, the Plaintiff respectfully requests this Court to adjudge that said policy never attached, is deemed void from inception or, alternatively, was breached and does not provide coverage for the claimed hull and machinery damage, where the Defendants breached the implied warranty of seaworthiness, and/or breached the policy's express warranty of seaworthiness, where the vessel was unseaworthy at all times material hereto and/or where the insured failed to maintain the vessel in a seaworthy condition, and/or failed to mitigate damages resulting in the subject loss claimed under the policy. On this basis, Plaintiff respectfully requests the Court to both enjoin and restrain Defendants from instituting any action against Plaintiff for recovery of the amount of the policy or any part thereof or for Plaintiff's failure to pay the claim, pending determination of this action and to declare the obligations of Plaintiff herein are non-existent or limited in a manner to be proven at time of trial.

CASE NO.

PAGE 6

Dated: June _12_ , 2007
      Miami, Florida

Respectfully submitted,

_____
JONATHAN W. SKIPP
Florida Bar No. 710570
jonathans@admiral-law.com
HORR, NOVAK & SKIPP, P.A.
Datran Building, Suite 1104
9100 South Dadeland Boulevard
Miami, Florida 33156
Phone: (305) 670-2525
Fax:  (305) 670-2526
Attorneys for Plaintiff

**TLDallas**

*Insurance since 1919*

Insurance Brokers
Marine Underwriting Agents
Credit Insurance Specialists

# COVER NOTE

### Policy No: 200/658/ 65699

T L Dallas (Special Risks) Ltd
5-6 Dalesway House
South Hawksworth Street
Ilkley LS29 9LA

Telephone +44 (0)1943 811000
Fax +44 (0)1943 601854/601875

In accordance with your instructions we have effected the following cover on your behalf subject to the terms and conditions in the policy wording and endorsements attached.

| Assured : | Producer : |
|---|---|
| Steven Pomarico & Dennis Dodson<br>15470 Softwood Court<br>Wellington<br>FL 33414 | USI Florida/Kolisch Insurance<br>90 Almeria Avenue<br>Coral Gables<br><br>FL 33134 |

| **Vessel Name:** | Doctor's Orders | **Model:** | Motor Yacht |
|---|---|---|---|
| **Year:** | 2003 | **Maker:** | Sea Ray |
| **ID Number:** | SER001145599 | **Length:** | 30 ' |
| **Engines:** | Gasoline | **Type:** | Mercruiser Twin 260hp |

**Period of Cover:** With effect from   June 25, 2005 00.01 LST   to   June 25, 2006 00.01 LST

### Cover and Respective Insured Limits:

| Section: | Sum Insured: | Deductible: |
|---|---|---|
| A) Hull | 120,000 | 2,400 |
| Tender | Not Covered | |
| Towing | 300 | 50 |
| B) P + I | 1,000,000 | 2,500 |
| Crew Liability | Not Covered | |
| Commercial Passenger Liability | 1,000,000 | 2,500 |
| Owner Operator | Not Covered | |
| C) Medical Payments | 5,000 | 100 |
| D) Uninsured Boaters | 25,000 | 500 |
| E) Trailer | Not Covered | |
| F) Personal Property | 2,500 | 250 |

**Total Premium :**   US$ 3335.00 C.R.O. + US$25 Certificate Fee

In the event of cancellation by the Assured minimum of 25% of premium deemed earned.
All fees earned at inception.



**EXHIBIT**

**A**

Member of the British Insurance
Brokers Association
Registered Number 952756
T L Dallas (Special Risks) Ltd
is authorised and regulated
by the Financial Services Authority
Registered Office: Dallas House, Bradford BD12 0HF

**Continuation Cover Note for Policy No: 200/658/ 65699**

**Laid Up Period :**          None

**Navigational Limits :**   Florida and the Bahamas - Not to exceed 50 miles offshore.

**Conditions :**              as per TLD/3/COM

**Warranties:**              Amended to include Captain/Bareboat Charter with a maximum of six passengers, excluding crew liability. Subject to Hold Harmless within Rental Agreement when operating as Bareboat.

Named Windstorm Deductible Clause.

**Endorsements :**          Limited Pollution Coverage Endorsement

**Special Warranties
or Conditions :**           Fasttrack Yacht Charters Inc, 401 Biscayne Blvd, Miami, FL 33132 & Sealine Marina & Yacht Center, 1635 North Bayshore Drive, Miami, FL 33132 are noted as additional assureds for liability only and subject to the Marina Co-Assured Clause.
Warranted no known or reported losses as at 27th June 2005

**Security as approved and agreed by you:**

Sections A), C), D) and F)

100% Great Lakes Reinsurance (UK) plc per Belmarine SA contract no: 200/658

Section B)

100% Certain Underwriters at LLOYD 'S per Osprey Underwriting Agency Ltd.

**Loss Payee :**  Assured

Date :   Wednesday, August 17, 2005          .................................................................

For and on behalf of Participating Underwriters

Continuation Cover Note for Policy No: 200/658/78444

| | |
|---|---|
| **Laid Up Period:** | None |
| **Navigational Limits:** | Florida and the Bahamas - Not to exceed 50 miles offshore. |
| **Conditions:** | As per TLD/5/COM. Amended to include Captain/Bareboat Charter with maximum six passengers. Excluding liability to paid crew. Subject to Hold Harmless within Rental Agreement whilst operating as Bareboat. Bareboat Charter conditions to apply. |
| **Warranties:** | Warranted not south of Tropic of Cancer. Warranted no known or reported losses as at 17th July 2006. |
| **Endorsements:** | None. |

**Security as approved and agreed by you:**

|        |      |                                                                                    |
|--------|------|------------------------------------------------------------------------------------|
|        | **Hull:** | 100% Great Lakes Reinsurance (UK) plc per Belmarine SA per contract 200/658. |
|        | **P&I:**  | 100% Great Lakes Reinsurance (UK) plc per Belmarine SA per contract 200/658. |
| **Loss Payee:** |      | Assured |

**Date:** Tuesday, July 18 2006

................................................................

For and on behalf of Participating Underwriters

## COMMERCIAL YACHT INSURING AGREEMENT WORDING

### 1. DEFINITIONS

a) "You and your" refer to the insured named on the declaration page and any person who possesses any legal or beneficial interest in any corporation, trust or entity either declared as the owner of the scheduled vessel or as an additional assured.

b) "We, us and our" refer to the insurers named on the declaration page or accompanying schedule of insurers.

c) "Covered person," means you, and or any person detailed on your application form which has been submitted and approved by us, provided that person has been declared to us as an operator of the scheduled vessel. This does not include either a paid captain and/or crew, or a person or organisation, or their employee or agent, operating a marina, boatyard, yacht club, charter operation, sales agency, refuelling dock or similar organisations, charterer or otherwise unless you have our agreement in writing to the contrary.

d) "Scheduled vessel" means the vessel described on the declaration page, including machinery, electrical equipment, sails, masts, spars, rigging, and all other equipment normally required for the operation and maintenance of the vessel and situate on the scheduled vessel ,which would normally be sold with the vessel. This does not include the vessel's life raft, tender or dinghy unless the same is declared on the declaration page, nor does it include any items being stored on premises other than onboard the scheduled vessel .

e) "Trailer" refers to the insured vessel's trailer, used exclusively for that purpose.

f) Words of a masculine gender are deemed to encompass the female gender and vice versa. Words in the singular are deemed to encompass the plural and vice versa.

g) "Navigational limits" means all waters as limited and shown on the declaration page unless mutually agreed by us and amended in writing.

h) "Salvage charges" means those reasonable charges and expenses which are incurred by you if necessary to prevent damage, injury or loss of life or to prevent or minimise any further loss or damage covered by Section "A" of your insuring agreement.

i) "Deductible" A deductible is the first amount of any claim, which must be paid by you. If a deductible is applicable to any section of your insuring agreement the amount will be shown on the declaration page and this amount will be deducted from the amount payable on each admissible claim.

j) "Bodily injury/property damage" means bodily injury or property damage occurring during the period of this insuring agreement arising from ownership and/or use of the vessel.

k) "Seaworthy" means fit for the Scheduled Vessel's intended purpose. Seaworthiness applies not only to the physical condition of the Hull, but to all its parts, equipment and gear and includes the responsibility of assigning an adequate crew. For the scheduled vessel to be seaworthy, it and its crew must be reasonably proper and suitable for its intended use.

l) 'Family' means any person related to you by blood, marriage or adoption, including wards and foster children.

m) 'Personal Property' means property purchased and owned by you, any covered person, any member of your family, provided that such property is situated on the vessel insured hereunder at the time of the loss, excluding any item that is deemed to be part of the Scheduled vessel.

n) 'Race or speed trial' means any event involving speed and/ or of a competitive nature, including, but not limited to, Regattas and/ or Rallies. "Preparing for a race or speed trial," means any navigation of the vessel necessary to ensure eligibility of either you or your vessel to participate in a race or speed trial.

o)  'Named Windstorm' damage is damage relating to or resulting from a named windstorm or any numbered tropical weather pattern from the time the "named windstorm" or numbered tropical weather pattern impacts the area and until 72 hours later.

The area of the 'named windstorm' or tropical weather pattern is an area encompassed by a circle of radius not exceeding 150 nautical miles from the path of the storm's forward travel.

p)  'Divers' means any person using underwater artificial breathing apparatus, and/or submersible mechanical or electrical device including, but not limited to, Submarines, Diving Bells and/or Diving Suits.

q)  'Operating' means to navigate or to be in physical control of or to be at the helm of the scheduled vessel.

r)  'Sinking' means when the vessel has sunk as far as is physically possible for the vessel to sink, and is totally submerged under water.

s)  'Abandoned' means where you have left the scheduled vessel unattended, whether intentionally or otherwise, whether written notice of the same has been tendered or otherwise, and where there is no damage to the scheduled vessel that would give rise to a payable claim hereunder.

t)  'Constructive' or 'Compromised' Total Loss means where we determine that either the reasonable cost of repairs exceed the sum insured, or where the net value being the sum insured, less the residual value of the scheduled vessel, is exceeded by or in our opinion is likely to be exceeded by the reasonable cost of repairs.

## 2. INSURING AGREEMENT

This is a legally binding insurance contract between you and us, incorporating in full the application form signed by you. We will provide the insurance coverage described in this insuring agreement, in return for payment to us of the premium due and compliance by covered persons with the provisions, conditions and warranties of this insuring agreement.

## 3. Coverage A, Hull, Machinery, Equipment and Dinghy

If a sum insured is shown for section "A" of the insuring agreement declaration page, we provide coverage for accidental physical loss of, or damage to the scheduled vessel which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declarations page, subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions.

Reasonable expenses incurred by you in attempting to minimise or mitigate a loss incurred and covered by this insuring agreement will be paid by us. These will be paid in addition to the sum insured under section "A" and "F". Our maximum liability for these expenses is 50% of the sum insured under section "A" of this insuring agreement less the deductible shown under section "A" and "F".

We will pay salvage charges incurred by you in pursuance of "your duties in the event of a loss" as set out in Section 10 of this insuring agreement, up to the limit of the sum insured under section "A" of this insuring agreement less the deductible shown under section "A".

If the Insured vessel shall come into collision with any other ship or vessel and you, in consequence thereof, become legally liable to pay by way of damages to any other person or persons any amount not exceeding the agreed value of the vessel hereby insured, we will reimburse you such amount paid, up to the agreed value hereby insured, less the deductible shown under section "A".

In no case shall the foregoing clause extend to cover any amount you become legally liable to pay in respect of removal of obstructions under statutory powers or for injury or damages to Harbours, Wharves, Piers, Stages and similar structures consequent on such collisions, or in respect of the cargo or engagements of the Insured vessel or for loss of life or personal injury, or for loss of income, value or otherwise of any other vessel or person.

A deductible of 10% of the agreed hull value of the scheduled vessel and/or equipment shall apply to each theft loss, including constructive or total loss of the Scheduled vessel. However a deductible of 5% of the

agreed hull value of the scheduled vessel shall apply to each theft loss, including constructive or total loss, provided the scheduled vessel is stored and/or moored in a commercial storage yard or marina that provides 24 hour security.

The deductible shown under section "A" of the insuring agreement declaration page shall apply to each claim under the insuring agreement except for claims for actual and/or constructive and/or compromised total loss of the scheduled vessel, unless caused by theft when the deductible as referred to above shall apply or arising from a named windstorm when the deductible detailed below shall apply.

Loss or damage to the scheduled vessel arising from a Named or numbered windstorm shall be subject to a deductible which shall apply to all claims, including Actual and/or Constructive and/or Compromised Total Loss of the insured vessel, equal to double the deductible as shown on the declaration page under section "A" and/or "F" of the insuring agreement.

## Exclusions to Coverage A

Unless specifically agreed us in writing and additional premium charged the following losses and or damages (whether incurred directly or indirectly) are not covered by this insuring agreement:

a)      Damage sustained by scheduled vessel whilst being transported over land(whether by trailer or other method of conveyance approved by us in writing), more than 100 miles from the normal place of storage, as disclosed within your application form.

b)      Losses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, mould, animal and marine life.

c)      Marring, scratching or denting of the hull and or equipment of the scheduled vessel.

d)      Osmosis, blistering or electrolysis.

e)      The costs of replacing or repairing any item of equipment which has failed as a result of manufacturing defects or design defects, including latent defects.

f)      Unrepaired damage claims if the scheduled vessel is subsequently deemed by us to be an actual or constructive total loss, during the insuring agreement period.

g)      Losses caused directly or indirectly by ice or freezing.

h)      Loss or damage caused intentionally by you and or any member of your family

i)      Theft of the scheduled vessel's equipment whilst afloat unless there is visible evidence of forcible entry onto the scheduled vessel and removal of the same, made by tools, explosives, electricity or chemicals.

j)      Theft of the dinghy or tender and/or its outboard motor to the insured scheduled vessel unless there is visible evidence of forcible entry and or removal made by tools, explosives, electricity or chemicals.

k)      Loss and or damage to the dinghy or tender and/or or its outboard motor whilst being towed behind the scheduled vessel or as a consequence of being towed behind the scheduled vessel.

l)      Damage to the scheduled vessel or tender caused by theft, and/or attempted theft unless there is visible evidence of forcible entry and or removal made by tools, explosives, electricity or chemicals.

m)      Your personal expenses or those of your family including but not limited to the cost of your own labour, hotel or accommodation costs, car rental and communication costs.

n)      Losses caused by delay and or loss of use and or enjoyment of the scheduled vessel and/ or its equipment.

o)   Theft of the scheduled vessel and or its equipment whilst on a trailer/boatlift/hoist/dry storage rack unless the scheduled vessel is situate in a locked and fenced enclosure or marina and there is visible evidence of forcible entry and or removal made by tools, explosives, electricity or chemicals

p)   Any loss of value of the Scheduled vessel and or its equipment as a result of repairs and or replacements being effected as a result of any claim hereunder.

q)   Damage existing prior to the inception date of this insuring agreement, whether you are aware of the same or otherwise.

r)   Loss or damage to the scheduled vessel and/ or its equipment where you have abandoned the scheduled vessel.

s)   Damage and or loss to the scheduled vessel and/ or its equipment caused by the officers, employees, agents, servants or independent contractors of any repair yard or marina.

t)   Loss of or damage to the scheduled vessel as a result of any repair yard lien being enforced, including but not restricted to the arrest or detention of the scheduled vessel by any repair yard.

## 4. Coverage B.  Third Party Liability

If a sum insured is shown under section "B" of the insuring agreement declaration page, we provide coverage for any sum or sums which you or any other covered person become legally liable to pay and shall pay as a result of ownership or operation of scheduled vessel.

We will settle or defend as we deem appropriate any claims or suits brought against you, using attorneys of our choice where we deem necessary.  Our obligation to settle or defend all third party liability claims under this insuring agreement ends when the amount we pay for damages, investigation costs, legal expenses and removal of wreck equals the sum insured under this section of the insuring agreement.

The deductibles shown on the insuring agreement declaration page shall apply to each third party liability claim.

### Exclusions to Coverage B

Unless specifically agreed by us in writing and an additional premium paid, Liability cover is not provided for:

a)   Covered persons with regard to their liability to you, other covered persons, your spouse, other members of your family or persons who reside in your household.

b)   Your liability to other covered persons, your spouse, other members of your family or  persons who reside in your household.

c)   Liability assumed by you under any contract or agreement.

d)   Liability which arises while the scheduled vessel is being transported on its own trailer or otherwise, except where the vessel is being hauled out or launched by a covered person.

e)   Fines or penalties imposed by any Government agency.

f)   Punitive or exemplary damages however described.

g)   Liability due to pollution by any substance whether it be gradual, or sudden and accidental.

h)   Intentional acts.

i)   Bodily injury or death benefits which are required to be or are covered by any State or Federal Act or Statute or any other compensatory statute.

j)   Bodily injury or death benefit to any persons employed by a covered person, hired as crew or not.

k)      Liability to persons being towed, or to be towed, or having been towed in the water or in the air, from the time they commence to leave the scheduled vessel, until they are safely back on board.

l)      Liability to or for divers operating from the scheduled vessel, from the time they commence to leave the vessel, until they are safely back on board.

m)      Liability to fare paying passengers or passengers carried under charter.

n)      Liability for damage to any marine estuary, artificial or natural reef, living or dead coral or other marine organisms, caused by the vessel or its operators or passengers.

o)      Loss or damage to any other vessel caused by the operation of the scheduled vessel in so far as the same would have been covered under section "A" of this insuring agreement.

p)      Liabilities, medical expenses, costs, fees or any other related expense whatsoever arising out of illness or injury in any way related to or caused by exposure to the sun or the sun's rays either cumulatively or suddenly.

q)      Any claim arising from directly or indirectly caused by or associated with Human T-Cell Lymphotropic Virus type III (HILV II) or Lymphadenopathy Associated Virus (LAV) or the mutants derivatives or variations thereof or in any way related to Acquired Immune Deficiency Syndrome or any syndrome or condition of a similar kind howsoever it may be named.

## Coverage B, Extension to include Crew Liability

Subject to our prior written agreement and your payment of an additional premium, we may at your request extend this insuring agreement to cover any sum or sums you become legally liable to pay and shall pay to hired crew resulting from injury, illness or death occurring whilst in the service of the scheduled vessel.

The maximum amount recoverable in respect of crew liability claims shall be the amount shown on the insuring agreement declaration page and shall form part of the maximum recoverable under Section "B", Third Party Liability. All other terms, warranties, conditions, and exclusions remain unaltered and in effect save for exclusion i) and j) above.

The deductible shown on the insuring agreement declaration page shall apply to each crew liability claim.

## Coverage B, Extension to include Commercial Passenger Liability

Subject to our prior written agreement and your payment of an additional premium, we may at your request extend this insuring agreement to cover all sums which you become legally liable to pay and shall pay to fare paying passengers or passengers carried under charter as a result of your ownership or operation of the scheduled vessel.

We will settle or defend as we deem appropriate any claims or suits brought against you using attorneys of our choice where we deem necessary.  The maximum amount recoverable in respect of Passenger Liability claims shall be the amount shown on the insuring agreement declaration page and shall form part of the maximum recoverable under Section "B", Third Party Liability.

The deductible shown on the insuring agreement declaration page shall apply to each passenger liability claim.

All other terms, warranties, conditions, exclusions remain unaltered and in effect save for exclusion m) above.

## Coverage B, Extension to include Limited Pollution Coverage

It is hereby noted and agreed that in consideration of the additional premiums charged herein and notwithstanding exclusion (g) Coverage B Third Party Liability, we agree to indemnify you for reasonable costs incurred by you preventing or mitigating a pollution hazard or threat thereof resulting directly from damage to the scheduled vessel, where coverage is afforded under this insuring agreement, provided always that such pollution hazard or threat thereof:

a)      Was sudden, unintentional and unexpected by you.

b)      That the incident commenced during the period of this insuring agreement.

c)      It became known to you within 72 hours of its commencement.

d)      Was reported to us in writing not later than seven days after having become known to you.

e)      Was not a result of your want of due diligence of that or your managers, servants or agents to prevent or mitigate such pollution hazard to threat thereof.

The maximum amount recoverable under this section shall be US$50,000 less the policy deductible detailed under Section B. These reasonable expenses must be incurred within one year from the commencement of the incident giving rise to a claim hereunder. Any amount recoverable hereunder shall form part of the maximum amount recoverable under Section B Liability.

## 5. Coverage C, Medical Payments

If a sum insured is shown under section "C" of the insuring agreement declaration page, we will pay reasonable medical and/or funeral expenses necessary due to accidental bodily injury or death of third parties, incurred whilst boarding, leaving or onboard the scheduled vessel insured under this insuring agreement.  These expenses must be incurred within one year from the date of the accident and will reduce any amount payable under section "B" of this insuring agreement, arising from the same occurrence.

This coverage will be in excess over any other applicable insurance.

Any sum insured under this section is our maximum liability for all claims arising from any one event, regardless of the number of persons involved.  Any payment made by us under this section is not an admission of liability for you or by us.

The deductible shown on the insuring agreement declarations page shall apply to each claim made under this section of the insuring agreement.

### Exclusions to Coverage C

We do not provide medical payment coverage for:

a)      Covered persons, their spouses, family or other persons who reside with them.  Employees of covered persons or anyone that is or should be covered under a State or Federal Act or Statute.

b)      Responsibility assumed under any contract or agreement.

c)      Anyone injured whilst the scheduled vessel is being transported, hauled out or launched.

d)      Trespassers on the scheduled vessel.

e)      Anyone to or for whom benefits are payable under any State or Federal Workers Compensation Act including but not limited to State Workers Compensation Act, Federal Longshoreman's and Harbour Workers Compensation Act or Federal Jones Act.

## 6. Coverage D, Uninsured Boaters

If a sum insured is shown under section "D" of the insuring agreement declaration page, coverage is provided in respect of sums which covered persons under this insuring agreement are legally entitled to recover from a third party vessel owner or operator, but which cannot be recovered either because they

have no marine liability insurance and no realisable assets or they cannot be identified, such as a hit and run operator.

The deductible shown on the insuring agreement declaration page shall apply to each claim made under this section of the insuring agreement.

The sum insured in respect of this coverage is our maximum liability for all uninsured boater claims regardless of the number of people involved and the number of claims made.

### Exclusions to Coverage D

We do not provide coverage for:

a)      Claims settled without our prior written consent.

b)      Loss due to an uninsured vessel which is a Government vessel.

c)      Loss due to a vessel operated by a covered person.

d)      Loss where no physical damage to the scheduled vessel exists, evidencing collision.

## 7. Coverage E, Trailer

If a sum insured is shown under Section "E" of the insuring agreement declaration page, we provide coverage for accidental physical loss of or damage to the trailer provided it is used exclusively for the transportation of the scheduled vessel insured under this insuring agreement, up to the sum insured.

Claims will be paid up to the limit of the sum insured, on the basis of the actual cost of repairing or replacing the trailer with a trailer of like kind and value.  Depreciation due to age and wear and tear will be taken into account in calculating claims under this insuring agreement.

Reasonable expenses incurred by you in attempting to minimise or mitigate a loss  covered by this insuring agreement will be paid by us, whether successful or not.  These will be paid in addition to the sum insured under section "E" without application of the insuring agreement deductible  Our maximum liability for such expenses is 50% of the sum insured under Section E.

The deductible shown under section "E" of the insuring agreement declaration page shall apply to each claim under this section of the insuring agreement.

### Exclusions to Coverage E

a)      Damages sustained by the trailer whilst the scheduled vessel is being transported over land, more than 100 miles from the normal place of storage, unless specifically agreed by us in writing and an additional premium paid.

b)      Losses due to wear and tear, gradual deterioration, lack of maintenance, weathering, insects, mould, animal or marine life.

c)      Marring, scratching or denting.

d)      Manufacturing defects or design defects, including latent defects.

e)      Tyre damage.

f)      Losses due to exceeding manufacturer's maximum load or speed specifications.

g)      Your personal expenses or those of your family including but not limited to, cost of your own labour, hotel or accommodation costs, car rental, communication costs.

h)      Theft of the trailer unless the trailer is stolen from a locked and fenced enclosure or marina and there is visible evidence of forcible entry or removal made with tools, explosives, electricity or chemicals.

## 8. Coverage F, Personal Property

If a sum insured is shown under Section F of the insuring agreement declaration page, we will cover direct loss or damage to personal property from any accidental cause, whilst property is onboard, being loaded onto, or unloaded from the scheduled vessel. Our maximum liability in respect of all claims arising from one event is the amount of the sum insured and our maximum liability for any one item, pair or set is US$1,000.

Fishing gear and tackle, unless permanently affixed to the scheduled vessel, is deemed personal property.

Claims will be settled on the basis of actual cash value of personal property, less the insuring agreement deductible and any claim made hereunder shall be adjusted in accordance with general principles of average. Where the sum insured is less than the overall actual cash value of the covered property situate on the scheduled vessel, we will only pay claims in the ratio that such sum insured bears to the overall cash value of the covered property situate on the scheduled vessel at the time of the covered loss.

### Exclusion to Coverage F

a)   Money, jewellery, watches, travellers cheques or any form of paper of value, furs, china, glass, silverware, antiques, collectibles or computer software.

b)   Fishing gear or tackle which is permanently affixed to the scheduled vessel, unless the scheduled vessel insured hereunder shall become an actual or constructive total loss, due to a covered loss.

We will not cover losses due to:

a)   Wear and tear, gradual deterioration, inherent vice, corrosion, damage due to changes in humidity or temperature or mechanical or electrical failure.

b)   Breakage of articles of a brittle nature unless caused by the scheduled vessel being stranded, sunk, burnt, on fire, or in collision or by stress of weather, burglars or thieves.

c)   Loss of water-skis or diving equipment, unless as a result of fire, or theft following forcible entry, or a total loss of the scheduled vessel.

d)   Theft and or damage caused by theft unless there is visible evidence of forcible entry and removal made by tools, explosives, electricity or chemicals.

## 9. General Conditions & Warranties

a)   It is warranted that the scheduled vessel is seaworthy at all times during the duration of this insuring agreement. Breach of this warranty will void this insuring agreement from its inception

b)   This insuring agreement incorporates in full your application for insurance and together with any endorsements issued herein, constitutes the entire contract between us. At your request, various provisions of this insuring agreement may be varied by us but only by our prior written agreement.

c)   This insuring agreement does not cover any loss or damage which occurs after its expiration. However, if you have been at sea in the scheduled vessel for at least 24 hours and this insuring agreement expires other than due to cancellation, you may renew or reinstate the insuring agreement at such time as the scheduled vessel arrives safely at its next port of call and for a further 24 hours provided that you contact us during that 24 hours and make the necessary arrangements as may be required by us to renew or reinstate the insuring agreement.

d)   This insuring agreement may be cancelled by either you or us at any time, subject to 10 days prior written notice. If it is cancelled by us, we will pay you a pro rata return of premium. If it is cancelled by you, we shall pay you a short rate return of premium calculated as pro rata less 10%. However if a reduced premium has been charged in consideration of a period of lay up, or an earned premium in respect of an agreed extended voyage, the return premium will be calculated based upon the actual activity of the scheduled vessel, and then pro rata or short rate applied. Cancellations due to sale of the scheduled vessel or non-payment of premium, or non-payment of

premium instalment to a premium financier are deemed cancellations by you. All policy fees are deemed earned at the inception of the policy.

e)    If you sell or pledge the scheduled vessel or otherwise transfer ownership in part or in full, or give up possession of the scheduled vessel, whether actual or otherwise, this insuring agreement is immediately cancelled by your action unless you have our prior written agreement to the contrary.

f)    In the event of an actual and/or constructive and/or compromised total loss under this insuring agreement the annual premium is deemed fully earned by us.

g)    If you have used a Broker to effect coverage, it is hereby agreed that your brokers or any substituted brokers (whether surplus line approved or otherwise), shall be deemed to be exclusively the agents of you and not of us in any and all matters relating to, connected with or affecting this insurance. Any notice given or mailed by or on behalf of us to the said brokers in connection with or affecting this insurance, or its cancellation, shall be deemed to have been delivered to you.

h)    We need not accept or pay for any property abandoned by you. At our option however we are entitled to the salvage value of any property or equipment where we have settled a claim in full under this insuring agreement, in respect of such property or equipment.

i)    It is warranted that covered persons must at all times comply with all laws and regulations, governing the use and or operation of the scheduled vessel.

j)    If the scheduled vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary.

k)    If you give up your rights or our rights to recover damages from anyone who may be liable to you, denying us the benefit of the right of recovery, payment of any admissible loss under this insuring agreement shall be reduced by the amount we have been denied.

l)    This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.

m)    We will not pay for any loss resulting from i) radioactive contamination, or nuclear reaction ii) pollution or contamination by any substance (other than to the extent provided for under extension of section B limited pollution coverage) iii) war declared or not, civil war, insurrection, rebellion, revolution or the consequences of any of these. iv) Capture, seizure, arrest, restraint or detainment by any government power or authority, lawful or otherwise.

n)    If we take steps to protect damaged or endangered property, this does not constitute acceptance of abandonment of that property by us or acceptance of any claim as may be covered hereunder.

o)    If any covered person has other insurance against risks covered by this insuring agreement, then this insurance shall be in excess over all other valid and collectible insurances.

p)    Unless we specifically agree in writing and the appropriate endorsement is issued, this insurance does not cover loss or liability incurred during a race or speed trial or during preparation for a race or speed trial.

q)    Unless we agree in writing to the contrary, if we request a survey of the scheduled vessel then it is warranted that such survey is in existence prior to the effective date of this insurance and a copy of the same must be received by us within 30 days of the effective date of this agreement. If the survey makes any recommendations with respect to the scheduled vessel, then it is warranted that all such recommendations are completed prior to any loss giving rise to any claim hereunder, by skilled workmen using fit and proper materials and that either:

1) The surveyor who carried out the survey certifies in writing that all recommendations have been completed to his (the surveyor's) satisfaction prior to any loss and/or claim

Or,

2) The workmen/repair yard that carried out the said work and/or recommendations certifies in writing that all recommendations have been completed prior to any loss and/or claim. Failure to comply with this warranty will void this agreement from inception.

r)  Where two or more insurers subscribe to this insurance their obligations are several and not joint and are limited solely to the extent of their individual subscriptions. The insurers in such circumstances are not responsible for the subscription of any co subscribing insurer who for any reason does not satisfy all or part of its obligations hereunder.

s)  The scheduled vessel shall be valued at the agreed valuation shown on the declaration page or on any endorsement thereto issued by us. However the following items are subject to payment on the basis of depreciated cash value less the applicable deductible. Depreciated cash value means replacement cost less the annual percentage factor of depreciation shown as follows:

   i)    Internal and/or external paints, finishes, gelcoat or other covering - 10% per annum
   ii)   Bottom paint including but not limited to anti-foul or barrier coat finishes- 50% per annum
   iii)  Sails, standing and running rigging - 12.5% per annum
   iv)   Internal and/or external protective covers, canvas, vinyl and other materials - 20% per annum
   v)    Internal and/or external upholstery, fabrics, wall coverings, carpets and rugs - 10% per annum
   vi)   Machinery including but not limited to engines, generators, water makers and waste systems - 7% per annum
   vii)  Outboard Motors - 20% per annum
   viii) Outdrives, propellers, shafts, rudders, struts, couplings, trim tabs, stabilisers  - 20% per annum
   ix)   Batteries and solar charging panels - 20% per annum
   x)    Electrical equipment including but not limited to internal and external appliances, winches, pump motors and electric deck gear  - 10% per annum.
   xi)   Mast and spars – 5% per annum.
   xii)  Stanchions and lifelines – 10% per annum.
   xiii) Inflatable, tenders or dinghies – 12.5 % per annum.
   xiv)  Hard FRP, composites, aluminium or wood tenders or dinghies – 10% per annum.

The cost of dry docking and/or lay-days shall be adjusted in accordance with the required time to complete the repair of covered losses.

However in no event shall the depreciation value be less than 20% of the replacement cost. Reasonable labour costs to repair or replace the damaged items following a recoverable claim shall be payable in full subject always to the applicable deductible.

If the hull is made in whole or in part of plywood, fibreglass, metal or other material of similar nature its repair shall be made by applying suitable patches to the damaged hull area in accordance with generally accepted good repair practice. This insuring agreement does not cover the cost or expense of painting or impregnating colour beyond the immediate damaged area or areas.

We have the right to settle any physical loss or damage claim under this insuring agreement, either by making payment to you of the estimated loss agreed between you and us, or by making repairs or replacements, like with like, for your lost or damaged property.

t)  No suit or action on this Insuring agreement for the recovery of any claim shall be sustainable in any court of law or equity unless the Assured shall have fully complied with all the requirements of this Insuring agreement, nor unless commenced within one (1) year from the date of the happening or the occurrence out of which the claim arose, provided that where such limitation of time is prohibited by the laws of the state wherein this Insuring agreement is issued, then, and in that event, no suit or action under this Insuring agreement shall be sustainable unless commenced within the shortest limitations permitted under the laws of such state.

u)  Where a lay up "laid up period" has been specified within the declaration page, it is warranted that the scheduled vessel will not be used, navigated or utilised, in any manner whatsoever, during the dates so specified.   "Use" includes, but is not restricted to, living on board the scheduled vessel.

v)  It is warranted that the scheduled vessel will be operated only by covered persons.

w)     Where you are entitled to limit your liability to third parties the maximum recoverable under Section 4 coverage B, third party liability herein, is the amount you become legally liable to pay or the limit of coverage shown under "Section B" of the insuring agreement declaration page, whichever is the lesser amount.

x)     In no event shall this insurance cover any loss, damage, expense or liability of whatever nature, which might otherwise be recoverable under this insuring agreement arising out of or in any way connected with, whether directly or indirectly, the use or operation of any computer, computer system, computer software, programme or process or any electronic system where any such loss, damage, expense or liability arises directly or indirectly, as a consequence of a) the date change to the year 2000 or any other date change and/or b) any change or modification of or to any such computer, computer system, computer software, programme or process or any electronic system in relation to any such date change.

## 10. Your Duties In The Event Of A Loss

1)     Immediately take all possible steps to minimise the loss and protect the scheduled vessel from further loss. Failure to do so may invalidate your insurance coverage or reduce the amount of any claim hereunder.

2)     Within 14 days of a loss giving rise to any claim hereunder give us written notification of the loss and its circumstances.

3)     Comply with any reasonable request made of you, by us with regard to the loss.

4)     Advise the Police, Coast Guard, or any appropriate authority of the loss and its circumstances.

5)     Give us an opportunity to examine the damaged property before it is repaired or discarded.

6)     Submit a claim form and/or statement describing the loss, together with two estimates of repair cost and/or records to substantiate the amount of the loss.

7)     Neither assume obligation, nor admit liability without our written permission to do so.

8)     Immediately forward to us any legal papers or notices received in connection with the loss.

9)     Cooperate with us in the investigation, defence or settlement of any loss and agree to be examined under oath if we so request.

10)     Allow examination by physicians of our choice.

11)     Assist us in obtaining copies of medical records and reports.

12)     Give us a notarised statement or statutory declaration if we so request.

13)     Give us a proof of loss and discharge of liability once the amount of the claim under this insuring agreement has been agreed with you.

14)     Preserve any right of recovery from others. When we pay a loss, your right to recover becomes ours up to the amount of our payment together with any legal fees and expenses You must also co-operate with us to recover the losses we may pay. Any amounts recovered from others belong to us up to the amount of our payment together with any legal fees and expenses.

## 11. Service Of Suit Clause

It is agreed that in the event of the failure of the Underwriters severally subscribed to this insurance (The Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.

Notwithstanding any provision elsewhere in this insurance relating to jurisdiction, it is agreed that the Underwriters have the right to commence an action in any court of competent jurisdiction in the United States of America, and nothing in this clause constitutes or should be understood to constitute a waiver of

the Underwriters' right to remove an action to the United States Federal District Court or to seek remand therefrom or to seek a transfer of any suit to any other court of competent jurisdiction as permitted by the laws of the United States of America or any state therein.
Subject to the Underwriters' rights set forth above:

a)      It is further agreed that the Assured may serve process upon any senior partner in the firm of:

LeBoeuf, Lamb, Greene & MacRae (Attorneys)<br>
125, West 55th Street<br>
New York, NY 10019-5389

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or any Appellate Court in the event of an appeal.

b)      The above named are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon request of the Assured to give written undertaking to the Assured that they will enter a general appearance upon the Underwriters' behalf in the event such a suit shall be instituted.

c)      The right of the Assured to bring suit as provided herein shall be limited to a suit brought in its own name and for its own account. For the purpose of suit as herein provided the word Assured includes any mortgage under a ship mortgage which is specifically named as a loss payee in this insurance and any person succeeding to the rights of any such mortgage.

d)      Further, pursuant to any Statute of any State, Territory or District of the United States of America which makes provision therefore, Underwriters hereby designate the Superintendent, Commissioner or Directors of Insurance or any other officer specified for that purpose in the statute, or his successor or successors in office (The Officer) as their true and lawful attorney upon may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named as the person to whom the Officer is authorised to mail such process or true copy thereof.

Clause 11 above is subject, in all respects to clause 12 hereafter.

**12. CHOICE OF LAW**

It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the state of New York.

This wording is the property of T L Dallas (Special Risks) Ltd and may not be reproduced wholly or in part by any means whatsoever without the express written permission of T L Dallas (Special Risks) Ltd.  T L Dallas (Special Risks) Ltd will seek legal redress from any person or persons found to have infringed their copyright.

JS 44 (Rev. 11/05)

## CIVIL COVER SHEET

## 07-21512

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

### I. (a) PLAINTIFFS

Great Lakes Reinsurance (UK) Plc

**DEFENDANTS**

Steven Pomarico and Dennis Dodson    CIV - ALTONAGA

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.    MAGISTRATE JUDGE
TURNOFF

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Jonathan W. Skipp, Esq. (305) 670-2525
Horr, Novak & Skipp, P.A.
9100 S. Dadeland Blvd., Suite 1104
Miami, Florida 33156

Attorneys (If Known)

**(d)** Check County Where Action Arose: ☑ MIAMI- DADE   ☐ MONROE   ☐ BROWARD   ☐ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE HIGHLANDS

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)   and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

*Miami 07cv21512 CMA*

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

### V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO    b) Related Cases ☐ YES ☑ NO

JUDGE _____   DOCKET NUMBER _____

### VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 U.S.C. Sec.2201 et seq.; this is an admiralty and maritime claim for declaratory judgment relief regarding coverage under a policy of marine insurance.

LENGTH OF TRIAL via _5_ days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE 6/12/07

FOR OFFICE USE ONLY

AMOUNT $ 350.00   RECEIPT # 961377

06/12/07